183637. All right, Mr. Stern, I'm sure it's not for lack of interest in your case that everybody's leaving, but go ahead, so . . . May it please the Court, I am Philip Stern, and I represent the Plaintiff Appellate, Anna Marie Avila. Reliant Capital . . . . . . Mr. Stern, the case of Vila is back. Yeah, she's back. And your client got exactly the language that she got in Avila 1 in the letter that she got here. It's exactly the same thing. What's the problem? Different facts. The fact that they're different is . . . Yes, but in Taylor, we had the argument that basically you are making now that people have a right to know that they can put off payment because things are being added on. And in Taylor, and I was on the panel as I was in Avila 1, and I've got to tell you that I found the argument in Taylor fairly appealing, but the rest of the panel didn't find it very appealing. And ultimately, I went along and wrote the opinion, which said that is not so. So, you know, that's the way it is, and I understand the Seventh Circuit says you have a right to be told that you can delay payment, but I just don't think that's the law of this circuit. Well, I don't think that . . . I think the facts in each of those cases are somewhat different. Obviously, dealing with the same issue about . . . It's exactly the same issue. I mean, sitting in the district court, I see these cases with some regularity, and it seems to me we've gotten away from what the statute was intended, which was to protect people from predatory practices, and now we're . . . and I think it's my colleague, Judge Kogan, who says this. We've gotten to a point where people are just combing through these letters. They're not the least sophisticated consumer at all. They are extremely sophisticated, going through these letters and picking out something that could be a problem, and that to me does not seem to be the purpose of the statute, particularly since this is not . . . this language doesn't seem to me inaccurate. So that's a lot for you to answer, I think. But I think it's there. Well, I'm aware of . . . you know, there's the . . . it's the Delforce v. Elman law case that Your Honor decided and was affirmed by the court, by the Second Circuit, and in that case, Elman took the language from Avila and Miller, took that language, and revised it to make it accurate. They said it is interest may accrue. They dropped that there would be late charges and other charges because it was not accurate. And in fact, by allowing this language, this . . . what's been called the Miller, the safe harbor language, to be used in this circumstance is exactly contrary to the very reason why Avila said to use the language, which is so that you . . . There may be some really wild cases. We're talking about what is going up and what is not going up is so misleading as to cause problems. But in this context, basically what they are doing is saying to any reasonable person what is going on, and we've done . . . you know, our court has looked at this and looked at it again and looked at it again and said, by and large, this is okay. And I know you got that Seventh Circuit opinion, which is different, but, you know, they do things differently in Chicago. Well, and here it's a situation where they took Miller, which is what Avila adopted, in Taylor, the court expressly adopted Chiu-Wei, a Seventh Circuit decision, dealing with not directly Miller, but this question in Taylor dealt with a static balance debt, a debt that never increases. And the request in Taylor was that . . . Haven't we said that we don't need to give precise detail about what increases and what does not increase? Isn't that the Sibyakuch case, whatever, Kalbaruch case? Haven't we expressly dealt with that issue as well? This court dealt with it in Avila, and Miller dealt with it as well and said, you don't have to use this language. There's no requirement that you use this language, but if you use this language, use it accurately. Is it enough for you to say in your complaint, well, these fees can't apply? I haven't looked at the complaint for a little while, but my recollection is that the only possible for these fees to apply. Don't you have to say something more than that? Well, two things. Number one, there is something . . . there is more than that that's in the complaint. That's the gist of what the complaint says, but what we're talking about is how do you prove a negative? How do I prove that there is no requirement, or I would say, prove it. How do I . . . what do I need to do to allege it, right? You know, look, you, someone, made a point that, well, this is actually post-default and there are no late charges assessed in a post-default scenario, right? Post-acceleration. Post-acceleration. Whatever it is. Which is also post-default, but yes. And, you know, that's either true or false, but there . . . other than the allegation, is that correct, that there are no late charges, no fees, no nothing? That's our understanding for . . . and the due diligence that we've done in terms of understanding it, the regulations . . . The allegation in this case, in Boucher at the Seventh Circuit, it was a proven fact. Right. Here, it is not. So, if we wanted to distinguish Boucher, we could do that on that ground. But under the 12B6 standard, that's . . . we're entitled to the benefit of the fact that we've alleged more than that. You know, it goes into detail and I can tell you it's . . . paragraph 19 is the allegation about acceleration and paragraphs 30 through 36 run through in specific. It's not just that it's not allowed as a matter of law. But the defendant cited a series of regulations under . . . for student loans that absolutely talked about the right to charge late charges and we agree that those are correct, but those talk about is when a scheduled payment, an installment is due. That's when late charges apply. And we submit also, there have been many cases in the mortgage area, in general provisions, you know, dealing with other types of installment loans, that late charges apply to the late payment of an installment. They never apply after there's an acceleration because there's no payment that could be late. That's the whole point of it. But the point, you know, I was going to get back to is . . . I'm sorry. So if that is just based on a statute or a regulation, if that is just clearly wrong, that is if in fact a late charge can be assessed post-acceleration, then what are we to make of that? What would we make of that? What could we make of that on appeal? Well, the fact that it's being asserted that you could be assessed late charges, I know it's a reported District Court of New Jersey case, but that dealt with the student loan similar kinds of issues, said, no, the use of the Miller Safe Harbor was materially misleading because it said you could be assessed late charges. Late charges under these student loans can be a substantial amount of money, well in excess of what, you know, the interest that might accrue over a course of a month. You've reserved three minutes for rebuttal, and I think it might be useful at this point to hear from Mr. Neuberger. Thank you. May it please the Court, I'm Manuel Neuberger, and I represent the appellee reliant in this case. Judge Calabresi and Taylor, and I'm paraphrasing, not quoting, you expressed concern in your questioning of Mr. Sanders that the decisions of this court should not be traps for the defenders needed to have some assurance that they actually could follow the law, and that when they followed a decision of this court, that wouldn't just simply set them up for the very next suit saying doing what the court said still violates the act. That's exactly what we're confronted with here. So Boucher, the Seventh Circuit case, and we love the Seventh Circuit by the way, does have an exception, so it's got to be accurate. It does. And one of the, and you agree with that, and obviously that's the thrust of Ms. Avila's claim, which is that there's an inaccuracy here when the notice talks about or references late charges. What is your response to that? Two responses. One brief, one needs a little explanation. The brief answer is that in both Boucher and Hovermael, the defendant conceded the inaccuracy. In each of those cases, the defendant conceded, for reasons I don't understand in Hovermael, that the debt was not subject to late fees or other charges. Were those motions to dismiss? I believe they were, Your Honor. And that, your question really goes to the heart of this. This plaintiff makes a speculative allegation. Plaintiff is informed and believes that no late charges or other fees can be applied. Now, the problem we see in all of these cases is a failure on the part of defense counsel to articulate to courts a point I want to make. There is a substantial difference between open-end credit and closed-end credit. All debts are not the same. And what happens in the subsets of open-end credit and closed-end credit is different. In Taylor, defense counsel never pointed out to the court that that was a credit card debt and that under the 2010 amendment to Regulation Z, once it was charged off and monthly billing statements ceased, the bank legally couldn't charge interest. It wasn't that they didn't, it was that they couldn't. In this case, as in Miller, we have a closed-end loan. And that makes a huge difference. At the time that this letter goes, any number of things can happen. This letter says that as a result of interest late fees or other charges, the amount due on the day you pay may be greater. And may is exactly right. The debtor could pay today and it's the exact balance in the letter. She could pay in three months and there will be additional interest. And by the way, the collection charges provided for in the HEA will go up as the balance goes up. So there will be other charges that she could not pay at all. She could refuse. The account could go to litigation. There could be attorney's fees added. But more than that, and this is what we see in both mortgage debts like Miller and student loan debts like this, she could seek reinstatement. And the essence of reinstatement is you have to pay what would have been paid. So if Ms. Avila comes and says, I want to reinstate, the answer is fine. But for every missed payment up until the date of reinstatement, you must pay the late charges. And we know that must have been contemplated in the Miller Safe Harbor language. Because I cannot believe that Judge Posner wasn't aware of this. That was an accelerated debt. As Mr. Stern correctly says, there wouldn't have been late charges. And yet the reference to late charges is crafted in the Miller Safe Harbor discussion, in the Miller Safe Harbor language. Judge Posner must have been recognizing that mortgage debts like student loan debts are frequently the subject of requests for reinstatement. And to reinstate would bring the late fees in. So each of the separate components used in the disclosure is possible because of the nature of the debt. And what the plaintiff had the option of doing was saying the contract forbids this. Federal law forbids this. Those allegations aren't made. In contrast, in Boucher, Wisconsin law forbids the charging of these other charges. Everyone agreed that interest was available, but the other charges were not because state law forbids it. In stark contrast, in this case, federal law expressly authorizes other charges. So with respect to my friend, Mr. Stern. Where is, what is that law?  It is specifically set forth that collection fees, attorney's fees, court costs, all of these other charges become due on these loans when they're in default. The option to reinstate. Post-default, post-acceleration, no distinction. Correct. Not late charges. Once acceleration occurs, I don't think there are late charges unless the consumer requests reinstatement. But if she requests reinstatement, there are a variety of student loan rehabilitation programs. And it's always. I would say it's a possibility, right? It's a possibility, Your Honor. And this is the problem. The debt collector does not have a crystal ball. They don't know what's going to happen when they send this letter. And if the purpose of this notice is to inform the consumer that the balance may increase, and you should recognize if you're going to prioritize your debts, this is one where the balance could increase. Then this becomes important for the consumer to know that's why these safe harbors exist. And in Kobasic, what this court said was the use of this disclaimer inoculates a debt collector against liability of the very type that's at issue here. So the question is, what could or should have happened? If the plaintiff believed that there was a true impediment to these charges, she should have pointed to a contract, a statute, a regulation that forbids it, just as was done in Boucher, where they pointed to specific Wisconsin statutory law that says you can't impose these charges. That was not done. Plaintiff's counsel, experienced counsel, didn't ask for leave to amend. That suggests that they had no basis for it. Mr. Stern's a good lawyer. If he thought that he had something to which he could have pointed, he surely would have asked for leave to amend. What he says is that the Higher Education Act argument is a new argument we're raising, but it's not at all. All we're doing is illustrating the point we made in the court below, which is that the complaint does not satisfy the requirements of Iqbal and Twombly. Twombly says- And it's in any event something we could take notice of and- Yes. If that's what it says, then that's fair. That's exactly right. Iqbal says that legal conclusions can't pose as factual statements, that there's this line between that which is possible and that which is probable. And you've got to get past that line, or plausible, actually. The complaint doesn't do that. It does not point to any reason. It talks about this information and belief. And so, what Reliant did was speak truthfully and accurately, giving Ms. Avila the notice that the court seemed to want her to have, to let her know that this debt could change, and it could change in any number of ways. And on the day this letter goes out, in every single closed-end credit loan where there's a possibility of reinstatement, mortgage loans and student loans in particular, there's no crystal ball. Thank you very much. Thank you. Mr. Stern. I think that Mr. Newberger almost said it, which was no late fees could accrue on this loan. I'm sorry. I think what, I'll just repeat, that what Mr. Newberger almost said, or maybe he in fact said it, was late fees could not accrue on this accelerated loan. What he's talking about reinstatement is, that's a hypothetical that was never raised. His client knew when they sent that letter that there were no late charges that could accrue on this loan. That is coercive to a consumer. Consumer faced with- They list three things that may happen. Right. What is so coercive about that? Okay. Because when a consumer receives a collection letter, and it's talked about in voucher, and it talks about it, those cases talk about it, the presumption is we're talking about an unsophisticated consumer who's in debt. They've got limited resources to pay debts. If they say is, I've got this debt and I've got that debt, and I'm trying to manage that, and this one's accruing late charges, I've got to do something about that. So, artificially, their letter- It's accruing interest. It is accruing, that's true. And you know what? I suspect that if this language weren't in there, Ms. Avila would be saying precisely the opposite. It's not true, Your Honor. It's really not. And the case, you know, Your Honor decided the Corwin case, Corwin involved where the debt collector correctly stated that only interest was accruing. They didn't say only interest. They only referred to interest. They didn't refer to late charges because there were no late charges to accrue. What if she said, I want to get my loan reinstated? You know, there could be- I mean, it offered all of the hypotheticals. When it's reinstated, it's not in default anymore. We're a completely different character of the debt. This is not, reliance is not even involved anymore. No, but the idea is that if it is reinstated. So, a future event may be that you reinstate in connection with getting this notice or in connection with the acceleration, you are then subject to late charges. Do you agree with that? We disagree. No, I don't agree with Mr. Newberger's statement that in order to reinstate, that you would not only have to pay the arrearages, but you have to pay the late charges that would have accrued had you been paying- No, no, no, you are exposed to liability for late charges. Do you agree with that? Once it's reinstated, if you miss, if you're late on a future payment, then late charges could accrue. That would be as if it was never default. It may be subject to late charges. I mean, they're just trying to give you the whole universe of possibilities, like that's what you wanted. That's what Ms. Avila wanted the first time she was here, the whole universe of things that could happen. And this court said, if you use this language, you're going to be okay. Now, we're going to tell them, well, you're not going to be okay, because- What Ms. Avila asked for, she never asked for Miller or this Safe Harbor. What she asked for, which the court did say first. And the court only got to talking about Miller and Safe Harbor later on when it was trying to address the concern that the debt collectors would misrepresent what was due. How can a debt collector possibly do what you are asking them to do in saying to a debtor precisely what might happen at every stage of the game? Because if they don't say that, then someone will say, in this case I was slightly misled. It just cannot work. It cannot work and it cannot be what this statute is about. And that is what this circuit has consistently said from the time of Avila when it said you have to say some things which are clear. But if you don't, if you say that, you're basically okay, unless it is a weird situation where that happens to be misleading. Which could be, but that is not anything that is here alleged. Your Honor, we're not suggesting that you have to get anywhere that granular with respect to deciding this information. You never do in any individual case ask for anything granular. You are just saying this particular thing here could conceivably mislead. And therefore, and then we do that, and then it's just- The court said, what Avila asked for in the first case, and what the court agreed with is, if the collection notice, and I'm quoting from Avila. If the collection notice accurately informs the consumer that the amount of the debt stated in the letter will increase over time, then there's no violation. That's what we're asking for, we're asking the court to enforce that, the accuracy. It's not accurate, and the court's concern was that with debt collectors would, and Judge Deary in the district court in the first Avila case had raised this issue, was that if we're going to make debt collectors have to tell consumers something about the debt increasing, then they might use that to coerce payments by sort of inflating or misrepresenting what it is. Deary got reversed in that case, right? But the court said is, after saying that you have to accurately inform the consumer, then said, Judge Deary's got a very good point, that's a real concern. And the way we're going to address that is, use Miller. And the court in Avila quoted Miller, where Miller said, you can only use it accurately. And then the court itself went ahead and said, use it accurately. We have your argument on hand, thank you. Thank you, Your Honor.